BRISCOE, Chief Judge,
concurring:
I agree with the ultimate conclusion that Sanchez-Gallegos was not in custody when he made his initial incriminating statements and that Miranda, therefore, does not apply. Thus, I agree that the district court did not err in denying the motion to suppress these incriminating statements. However, in my view, Sanchez-Gallegos’s encounter exceeded the parameters for a routine stop at a fixed border checkpoint established in United States v. Massie, 65 F.3d 843 (10th Cir.1995). Nonetheless, I conclude that Sanchez-Gallegos was not in custody for purposes of Miranda based on the totality of the circumstances presented.
I
In United States v. Hudson, this court established that “a routine stop at a fixed border checkpoint, i.e., a stop within the parameters set forth by this court in Mas-sie, is not custodial and Miranda warnings are not necessary.” Hudson, 210 F.3d 1184, 1191 (10th Cir.2000). Thus, the first question to address is “whether the facts of this case take it outside of the Massie heartland.” Id. I conclude that Sanchez-Gallegos’s encounter with the border patrol agents exceeded the Massie parameters for a routine stop at a fixed border checkpoint.
In Massie, this court defined a routine fixed border checkpoint stop as a “brief and unintrusive ” encounter where “a border patrol agent may ask questions reasonably related to his duties and explore suspicious circumstances.” 65 F.3d at 848 (emphasis added). Further, without exceeding the confines of a routine fixed border checkpoint stop, an agent may direct individuals to a secondary checkpoint and can pursue inquiries at the secondary location regarding “vehicle ownership, cargo, destination, and travel plans, and ... any suspicious circumstances ... observed, as long as the detention remain[s] brief and unintrusive.” Id. at 849 (internal quotation marks and citation omitted). Thus, in Massie, this court characterized as a routine checkpoint stop an encounter at a fixed border checkpoint involving inquiries that “lasted only eight to eleven minutes from the time Defendants were stopped at primary to the moment the dog *68 alerted on the trunk” and that concerned “citizenship, vehicle ownership, vehicle contents, destination, and travel plans.” Id.
Sanchez-Gallegos’s stop at the fixed border checkpoint exceeded the Massie parameters due the length and intrusiveness of the encounter. Initially, the encounter began as a routine fixed border checkpoint stop. Specifically, the border patrol agents asked routine questions and referred Sanchez-Gallegos to the secondary checkpoint, where he consented to a canine search of his vehicle. See Hudson, 210 F.3d at 1192-93. However, after the dog alerted to the vehicle, Sanchez-Gallegos was asked to proceed to the secondary checkpoint office and he submitted to a consensual pat-down search for the agents’ safety, which revealed approximately eight thousand dollars in his pocket. While Sanchez-Gallegos waited in the secondary checkpoint office, border patrol agents searched the interior of his vehicle, uncovering six Mexican birth certificates. At this point, after Sanchez-Gallegos had been detained at the checkpoint for approximately forty to fifty minutes, the agents engaged in the questioning that elicited the incriminating statements at issue in this case. I conclude that this encounter necessarily extended beyond the confines of a brief, unintrusive detention as required in Massie for a routine stop at a fixed border checkpoint.
II
Even though the encounter exceeded the parameters of Massie, this does not dictate the conclusion that Sanchez-Gallegos was in custody for purposes of Miranda. See Hudson, 210 F.3d at 1191 n. 8 (“[T]his court does not mean to suggest that every time a border stop evolves beyond the routine parameters set forth in Massie a custodial situation is created.”). Rather, this court must still consider the totality of the circumstances presented to determine “whether a reasonable person in [the suspect’s] position would have understood [his] freedom of action to have been restricted to a degree consistent with formal arrest.” United States v. Revels, 510 F.3d 1269, 1275 (10th Cir.2007). This inquiry involves examination of the following non-exhaustive factors: “(1) whether the circumstances demonstrated a police-dominated atmosphere; (2) whether the nature and length of the officers’ questioning was accusatory or coercive; and (3) whether the police made [the suspect] aware that []he was free to refrain from answering questions, or to otherwise end the interview.” Id.
Examining the totality of the circumstances presented in this case, I conclude that Sanchez-Gallegos was not in custody for the purposes of Miranda. First, Sanchez-Gallegos was not questioned in a police-dominated atmosphere. Specifically, only two border patrol agents were present during the questioning that elicited the incriminating statements. Further, while the questioning occurred in the secondary checkpoint office, Sanchez-Gallegos was directed to that location during the search of his vehicle and after he submitted to a consensual pat-down search. See United States v. Butler, 249 F.3d 1094, 1100-01 (9th Cir.2001) (“[T]he mere detention of a person in a border station’s security office from which he or she is not free to leave, while a search of a vehicle occurs, is not ‘custody’ for [Miranda] purposes.”).
Second, the nature and length of the officers’ questioning was not accusatory or coercive. Specifically, there is no indication that the border patrol agents spoke in a threatening or accusatory tone and the agents did not display their weapons during the inquiry. Further, Sanchez-Gallegos was not placed in handcuffs or a holding *69 cell, he was not told that he was under arrest, and he was not questioned for a long period of time. In fact, the questioning that elicited the incriminating statements at issue in this case was brief. However, Sanchez-Gallegos was not informed of his right to terminate the encounter with the agents. Nevertheless, when considering the totality of the circumstances, I conclude that Sanchez-Gallegos was not in custody for the purposes of Miranda. See United States v. Jones, 523 F.3d 1235, 1240 (10th Cir.2008) (“Although these factors are useful, we emphasize that we must look to the totality of the circumstances and consider the police-citizen encounter as a whole, rather than picking some facts and ignoring others.”).
As Sanchez-Gallegos was not in custody for the purposes of Miranda, I also conclude that the district court did not err in denying the motion to suppress his initial incriminating statements.